UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---x

JANAE DEROCHE and JASMINE REAVIS-BEY,

Plaintiffs,

-against-

CARRINGTON MORTGAGE SERVICES, LLC,

Defendant.

---x

No. 1:26-cv-5320

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Janae DeRoche and Jasmine Reavis-Bey, by their attorneys, Mobilization for Justice, Inc. ("MFJ"), complain of the Defendant, Carrington Mortgage Services, LLC, as follows:

## INTRODUCTION

1. This action seeks actual damages from Defendant Carrington Mortgage Services, LLC ("Carrington") for its violation of the Real Estate Settlement Procedures Act (RESPA) and RESPA's implementing regulations at Title 12 of the Code of Federal Regulations ("Regulation X"), and for its violation of New York General Business Law section 349 ("GBL § 349").

2. Carrington violated Regulation X by failing to acknowledge a loss mitigation application seeking a mortgage loan modification submitted by Plaintiffs and failing to evaluate Plaintiffs for all loss mitigation options available to them in response to their application.

3. In addition, Carrington violated GBL § 349 because it refused to acknowledge or evaluate Plaintiffs' loss mitigation application based on the false pretense that Plaintiffs are not "confirmed successors in interest" to their deceased mother, as defined by Regulation X. At the time of these refusals, Carrington had already identified Plaintiffs as the intestate heirs of their mother in an ongoing foreclosure action and had already obtained a court order substituting

Plaintiffs as "heirs and distributees" of their mother on this basis, rendering Plaintiffs confirmed successors in interest.

4. Upon information and belief, as a direct result of Carrington's deceptive conduct and failure to evaluate Plaintiffs for available loss mitigation options, Plaintiffs were deprived of an affordable mortgage loan modification that would have resolved the foreclosure litigation. Consequently, the foreclosure litigation has not been resolved, Carrington has charged additional interest and late fees to the mortgage account, Carrington has charged attorney's fees for services that would not have been necessary had the mortgage been modified, and Plaintiffs have experienced feelings of uncertainty, anxiety, stress, embarrassment, and hopelessness as a result of Carrington's actions.

## PARTIES

5. Plaintiffs Janae DeRoche and Jasmine Reavis-Bey reside in Kings County, New York.

6. Upon information and belief, Defendant Carrington Mortgage Services, LLC is a limited liability company formed in Delaware, with a principal place of business in California.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction over Plaintiff's' federal RESPA claims pursuant to 28 U.S.C. Section 1331 and 12 U.S.C. Section 2614.

8. This action is brought in the judicial district where Plaintiffs reside. Plaintiffs reside in Kings County, New York.

## FACTUAL ALLEGATIONS

### A. The Home and the State Court Foreclosure Action.

9. Plaintiffs' mother, Jamilla Reavis-Bey, purchased the single-family home located at 622 Shepherd Avenue, Brooklyn, New York 11208 (the "Home") in 1989. Plaintiffs grew up in and currently reside at the Home.

10. In 2005, Jamilla Reavis-Bey took out a mortgage loan secured by the Home (the "Mortgage"). The Mortgage was originated by Countrywide Home Loans, Inc., doing business as America's Wholesale Lender, and was labeled as a subprime mortgage.

11. Due to financial strain resulting from her own mother's illness and eventual death, Jamilla Reavis-Bey fell behind on the Mortgage payments in 2011.

12. On or about October 22, 2015, Bank of New York Mellon as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates Series 2005-1 ("BNY"), commenced an action against Jamilla Reavis-Bey in Kings County Supreme Court under Index Number 12752/2015 seeking to foreclose on the Mortgage (the "Foreclosure Action").

13. Carrington became the servicer of the Mortgage in about 2017.

14. Upon information and belief, since it took over servicing of the loan, Carrington has actively managed the litigation of the Foreclosure Action on behalf of BNY.

15. By power of attorney dated September 8, 2017, BNY appointed Carrington to serve as its "true and lawful attorneys in fact and agents, with full powers of substitution and resubstitution, for and in its name, place and stead, in any and all capacities" for purpose of bringing or defending litigation in BNY's name with regards to the Mortgage.

16. Additionally, Carrington has actively participated in the litigation in its own name by filing an affidavit in support of a motion brought by the plaintiff in the Foreclosure Action.

17. Jamilla Reavis-Bey died on June 22, 2021.

18. MFJ represented Jamilla Reavis-Bey in the Foreclosure Action until her death.

19. On July 29, 2021, MFJ notified the Judge assigned to the Foreclosure Action and Carrington, by its counsel, that Jamilla Reavis-Bey had died.

**B. Carrington's Confirmation of Janae DeRoche and Jasmine Reavis-Bey as Intestate Heirs of Jamilla Reavis-Bey.**

20. After learning of Jamilla Reavis-Bey's death, Carrington performed its own investigation and, acting in the name of BNY, successfully moved to substitute Jasmine Reavis-Bae and Janae DeRoche as "heirs and distributees" to Jamilla Revis-Bey in the foreclosure action.

21. On December 14, 2021, Carrington, acting in the name of BNY, filed an Affidavit of Service and an Affidavit of Service by Mail in the Foreclosure Action alleging that on November 31, 2021, and December 8, 2021, respectively, it had served Jasmine Reavis-Bey, "as possible heir to the estate of Jamilla Reavis Bey," with the Summons and Complaint from the Foreclosure Action at the Home.

22. On January 7, 2022, Carrington, acting the in the name of BNY, filed an Affidavit of Service and an Affidavit of Service by Mail in the Foreclosure Action alleging that on December 17, 2021, and December 22, 2021, respectively, it had served Janae DeRoche, "as heir to the estate of Jamilla Reavis Bey," with the Summons and Complaint from the Foreclosure Action.

23. On May 16, 2022, Carrington, acting the in the name of BNY, filed a motion in the Foreclosure Action to substitute "Janae DeRoche, as heir and distributee of the Estate of Jamilla Reavis Bey," and "Jasmine Reavis-Bey, as heir and distribute of the Estate of Jamilla Reavis Bey," as defendants.

24. In support of the motion to substitute, Carrington, through its attorneys in the Foreclosure Action, stated that it had retained a process servicing company "to complete an

heirship investigation for Jamilla Reavis-Bey" and that the investigation had identified Plaintiffs as heirs of Jamilla Reavis-Bey.

25. Also in support of the motion to substitute, Carrington, acting the in the name of BNY, submitted an affidavit from Domenic Lanza, an attorney employed by the servicing company, which describes the investigation he undertook to identify the heirs of Jamilla Reavis-Bey (the "Lanza Affidavit").

26. In his affidavit, Mr. Lanza states that he reviewed Jamilla Reavis-Bey's death certificate and that it lists Janae DeRoche as the informant and identifies her as Jamilla Reavis-Bey's daughter. Attached to the Lanza Affidavit is a copy of Jamilla Reavis-Bey's death certificate, which lists Janae DeRoche as the informant and identifies her as Jamilla Reavis-Bey's daughter.

27. Mr. Lanza further states that on November 9, 2021, his agent, Joseph Casella, went to the Surrogate's Court of the State of New York, Kings County, and the court's "records revealed that Jamilla Reavis Bey had no filings or proceedings with said court." Attached to the Lanza Affidavit is an affidavit from Joseph Casella confirming these facts.

28. In his affidavit, Mr. Lanza also states that he obtained a copy of the invoice for the funeral services for Jamilla Reavis-Bey from the funeral home where her services were held, Grace Funeral Chapels, and that the invoice reflects that it was sent to Janae DeRoche. Attached to the Lanza Affidavit is a copy of this invoice, which indicates that it was issued to Janae DeRoche.

29. By order dated October 26, 2022, the court in the Foreclosure Action granted the motion to substitute.

30. In its order granting the motion to substitute, the court identified Janae DeRoche and Jasmine Reavis-Bey as heirs of Jamilla Reavis-Bey and distributees of her estate.

31. Thus, no later than October 26, 2022, Carrington had already confirmed that Janae Deroche and Jasmine Reavis-Bey were the intestate heirs of Jamilla Reavis-Bey and obtained a court order reflecting as much.

**C. Plaintiffs' Efforts to Be Evaluated by Carrington for Loss Mitigation.**

32. Following the death of Jamilla Reavis-Bey, MFJ began representing Janae DeRoche and Jasmine Reavis-Bey.

33. On November 2, 2022, MFJ prepared a request for information (the "November 2022 RFI") to Carrington identifying Janae DeRoche as a successor-in-interest to Jamilla Reavis-Bey and requesting a description of the documents Carrington required to confirm her identity and ownership interest in the Home.

34. The November 2022 RFI explained that Ms. DeRoche is one of Jamilla Reavis-Bey's two children, and that ownership of the Home transferred to Ms. DeRoche and her sister upon the death of Jamilla Reavis-Bey by operation of law when Jamilla Reavis-Bey died intestate.

35. On or about November 8, 2022, Carrington mailed a letter to the Home addressed to Janae DeRoche stating that it was "in receipt of a request for information by an unauthorized third party individual(s), company(ies), or counselor(s)" and that "Carrington has determined the borrower(s) has not provided authorization to the requester who has attempted to obtain information regarding the mortgage loan." Enclosed with the letter was a third-party authorization form. The letter directed "the borrower(s)" to complete and return the form in order for the third party "[t]o gain access to information regarding the account."

36. Meanwhile, on December 5, 2022, Carrington, acting the in the name of BNY, filed an Amended Complaint in the Foreclosure Action reflecting the substitution of Janae DeRoche and Jasmine Reavis-Bey, in their capacities as heirs of Jamilla Reavis-Bey, as defendants.

37. On or about January 4, 2023, Janae DeRoche and Jasmine Reavis-Bey filed verified answers in the Foreclosure Action. Each stated in their verified answer that they are a daughter of and a successor-in-interest to Jamilla Reavis-Bey.

38. On July 19, 2023, Plaintiffs were appointed as the administrators of Jamilla Reavis-Bey's estate by the Surrogate's Court of the State of New York, Kings County.

39. On August 24, 2023, MFJ submitted another request for information to Carrington on behalf of Plaintiffs requesting that Carrington provide a written description of the documents it required to confirm Plaintiffs as successors-in-interest to Jamilla Reavis-Bey (the "August 2023 RFI").

40. The August 2023 RFI explained that Plaintiffs are the only children of Jamilla Reavis-Bey and that Jamilla Reavis-Bey was unmarried at the time of her death. It further explained that Jamilla Reavis-Bey died intestate, and that ownership of the Home transferred to Plaintiffs by operation of law upon the death of Jamilla Reavis-Bey.

41. MFJ sent the August 2023 RFI to Carrington by certified mail to the address designated by Carrington for requests for information; it was delivered to Carrington on August 29, 2023.

42. Enclosed with the August 2023 RFI was a third-party authorization executed by Janae DeRoche and Jasmine Reavis-Bey authorizing Carrington and MFJ to, inter alia, share public and non-public information about the mortgage and Plaintiffs' finances with one another.

43. On August 29, 2023, MFJ submitted a loss mitigation application seeking a loan modification on behalf of both Plaintiffs to Carrington (the "Loss Mitigation Application"). The Loss Mitigation Application included all documents that Carrington indicated on the "Mortgage Assistance" page of its website it required to complete a loss mitigation review, including:

a. a completed "Mortgage Assistance Application" form for both Plaintiffs, and the income documentation required by this Application, including Janae DeRoche's most recent consecutive 30 days of paystubs (specifically her biweekly paystubs dated June 2, 2023, June 16, 2023, and June 30, 2023), a quarterly profit and loss statement for Jasmine Reavis-Bey's self-employment (covering the quarter from April 1, 2023, through June 30, 2023), and Jasmine Reavis-Bey's 2022 federal income tax return including all schedules;

b. completed "Statement of Information" forms for both Plaintiffs, which provide information about an applicant's occupational history, past residences, past spouses or former marriages, and any history of bankruptcy; and

c. completed Internal Revenue Service Form 4506-Cs, IVES Request for Transcript of Tax Return, for both Plaintiffs, which authorize Carrington's agent to obtain Plaintiffs' tax return transcripts.

44. According to the Mortgage Assistance page of Carrington's website,[1] "If you are having difficulty making your monthly mortgage payments, you have options," and "[t]he goal of mortgage assistance is to keep you in your home by making your mortgage payments more manageable. The process begins by submitting a request for mortgage assistance." The webpage further states that "[s]ubmitting a request allows your situation to be reviewed across all mortgage assistance options to determine a best-case scenario," and lists "[e]xamples of mortgage assistance options that may be available to you," including "LOAN MODFICATION," meaning "[a] permanent change to your loan terms allowing you to repay the loan on newly agreed upon terms, which may include a change in interest rate, placing past due amounts at the end of the loan, and/or

---

[1] *Mortgage Assistance*, Carrington Mortgage Services, *available at*: https://www.carringtonmortgage.com/mortgage-assistance (last visited July 20, 2026).

extending the term of the loan." Carrington's Mortgage Assistance webpage contained the same or substantially the same language as of August 29, 2023.

45. A cover letter included with the Loss Mitigation Application reiterated that Plaintiffs are the successors-in-interest to Jamilla Reavis-Bey. As also noted in the cover letter, enclosed with the Loss Mitigation Application was a copy of the August 2023 RFI.

46. MFJ sent the Loss Mitigation Application to Carrington by certified mail; it was delivered to Carrington on September 5, 2023.

47. Carrington never acknowledged Plaintiffs' Loss Mitigation Application or evaluated Plaintiffs for any loss mitigation options available to them. Instead, it sent a series of confusing and contradictory letters directly to Plaintiffs, requesting certain documents from Plaintiffs in order to confirm them as successors in interest. All the while, Carrington, acting on behalf of BNY, continued to prosecute its Foreclosure Action against Plaintiffs as successors in interest to Jamilla Reavis-Bey.

48. At all relevant times, Janae DeRoche has maintained employment as a direct care worker. At all relevant times, Jasmine Reavis-Bey has maintained employment as a performer. Jasmine Reavis-Bey has also supplemented her income through gig work.

49. Upon information and belief, had Carrington evaluated Plaintiffs for loss mitigation, they would have been eligible for an affordable loan modification.

### D. Carrington's Deceptive Refusals to Expressly Acknowledge Plaintiffs as Successors in Interest.

50. Inexplicably, Carrington sent a series of confusing letters falsely claiming that it could not confirm whether Plaintiffs were successors in interest.

51. Carrington sent a letter to Janae DeRoche dated September 12, 2023, stating that it was "in receipt of your recent correspondence received on 9/11/23" and that it recognized Ms.

DeRoche "as a *potential* successor in interest" to Jamilla Reavis-Bey (the "DeRoche Potential SII Letter").

52. At this time, Carrington had already, on its own initiative, obtained a court order stating that Plaintiffs were Jamilla Reavis-Bey's heirs.

53. The DeRoche Potential SII Letter further stated that Carrington required two documents to confirm Ms. DeRoche as a successor-in-interest: (1) "Clear copy of State or Federal Issued Photo Identification" and (2) one of a list of possible documents, which included letters of administration or "an Affidavit Confirming the Potential Successor in Interest is an Heir or Beneficiary to the borrower."

54. The DeRoche Potential SII Letter specified three ways that the required documents could be submitted, including by email to SuccessorDocuments@carringtonms.com.

55. On October 23, 2023, MFJ emailed copies of Jasmine Reavis-Bey's New York State Driver's License, Janae DeRoche's New York City Identification Card, and the Letters of Administration issued by the Surrogate's Court to SuccessorDocuments@carringtonms.com.

56. On November 13, 2023, MFJ received correspondence from Carrington, dated November 3, 2023, stating that it was "in response to your inquiry received . . . on August 30, 2023," and that "As we understand your correspondence, you are seeking a description of the documents required to be recognized as successor in interest" for Jamilla Reavis-Bey's account (the "November 3, 2023, Letter to MFJ").

57. Enclosed with the November 3, 2023, Letter to MFJ was a copy of the DeRoche Potential SII Letter. The Letter further stated that "[o]n October 11, 2023, Carrington issued a Potential Successor in Interest Denial Notification as all the previously requested documents still needed to be received," and enclosed with the November 3, 2023, Letter to MFJ was a copy of this

"denial notification," which was addressed only to Janae DeRoche. Neither Janae DeRoche nor MFJ had previously received a copy of the October 11, 2023, "denial notification."

58. Jasmine Reavis-Bey did not receive any acknowledgement of the August 2023 RFI from Carrington and, upon information and belief, Carrington never sent her any acknowledgement.

59. On November 3, 2023, MFJ received correspondence from Carrington to Jasmine Reavis-Bey dated October 30, 2023, stating that Carrington was "in receipt of your recent inquiry/correspondence received on 10/23/2023 and recognizes you as a *potential* successor in interest" to Jamilla Reavis-Bey (the "Jasmine Reavis-Bey Potential SII Letter").

60. On December 1, 2023, MFJ received correspondence from Carrington to Jasmine Reavis-Bey, dated November 22, 2023, with the subject "Potential Successor in Interest Denial Notification." This correspondence stated that "[o]n 10/23/23, [Carrington] sent you a Potential Successor in Interest Acknowledgement and Document Request Letter outlining the document (s) needed to confirm you as a successor in interest" and "Carrington has not received sufficient information in order to confirm that you are a successor in interest."

61. While Carrington was refusing to acknowledge Plaintiffs' Loss Mitigation Application, MFJ submitted a complaint to the Office of the Attorney General of New York State, Bureau of Consumer Frauds and Protection ("OAG"), regarding Carrington's lack of response to the August 2023 RFI, its failure to acknowledge confirmation of Plaintiffs as successors-in-interest to Jamilla Reavis-Bey, and its lack of acknowledgement of and response to the Loss Mitigation Application.

62. In response to MFJ's complaint, Carrington sent the OAG a letter dated December 8, 2023 ("Carrington OAG Response"). The Carrington OAG Response states that Carrington

received "the initial inquiry from [MFJ] on or about August 30, 2023, which raises the same issues as the current inquiry." It further states that Carrington "researched the account, and a response was sent to [MFJ] on November 3, 2023."

63. The Carrington OAG Response further states that "on or about September 7, 2023, Carrington received a Request for Mortgage Assistance ('RMA') application" and "[t]hereafter, as previously indicated in the response dated November 3, 2023, on or about September 12, 2023, Carrington issued a Potential Successor in Interest Acknowledgement letter indicating correspondence was received regarding ownership interest [*sic*] in the property."

64. The Carrington OAG Response also states that "[o]n or about October 11, 2023, a Potential Successor in Interest Denial Notification was sent advising that Carrington has not received sufficient information in order to confirm the potential SII as an SII."

65. The Foreclosure Action remains pending.

66. Plaintiffs have experienced feelings of uncertainty, anxiety, stress, embarrassment, and hopelessness due to Carrington's failure to acknowledge and evaluate their loss mitigation application and the inability to resolve the Foreclosure Action.

**FIRST CAUSE OF ACTION**
**Violation of RESPA, 12 U.S.C. § 2605(f), as Implemented by Regulation X, 12 C.F.R. 1024.41**

67. Plaintiffs restate, reallege, and incorporate by reference all foregoing paragraphs.

68. Jamilla Reavis-Bey's mortgage is a "federally related mortgage loan" under RESPA because it is secured by a lien on residential real property upon which a single-family dwelling is located, and Countrywide Home Loans was regulated by the Federal Reserve Board as of 2005. *See* 12 C.F.R. §§ 1024.2(b)(i)(A), (b)(ii)(A).

69. Carrington is a "servicer" covered by RESPA because it is responsible for servicing of Jamilla Reavis-Bey's mortgage by requesting and collecting payments from Jamilla Reavis-Bey

or her estate, and further making those payments toward reduction of the loan in accordance with the language of RESPA. 12 U.S.C. § 2605(i)(2); *see* 12 U.S.C. § 2605(i)(3).

70. RESPA's implementing regulations require that a servicer consider a "confirmed successor in interest" to be a "borrower" for purposes of the mortgage servicing provisions of Regulation X. 12 C.F.R. § 1024.30(d); *see generally* 12 C.F.R. §§ 1024.31-1024.41.

71. A "confirmed successor in interest" for purposes of RESPA "means a successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in a property that secures" a federally related mortgage loan. 12 C.F.R. § 1024.31.

72. Plaintiffs are confirmed successors in interest because Carrington confirmed their identities and ownership interests in the Home, as demonstrated by the court order that Carrington, acting on behalf of BNY, obtained in the foreclosure action substituting Plaintiffs as heirs of Jamilla Reavis-Bey and distributees of her estate in the Foreclosure Action.

73. Regulation X provides that, in response to a loss mitigation application, a servicer must notify a borrower in writing within five business days that it acknowledges receipt of the application and that it has determined that that the application is either complete or incomplete. 12 C.F.R. § 1024.41(b)(2).

74. A loss mitigation application is complete when it provides "all information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

75. If a loss mitigation application is incomplete, the notice that the servicer must provide to the borrower(s) acknowledging receipt pursuant to 12 C.F.R. § 1024.41(b)(2) "shall state the additional documents and information the borrower must submit to make the loss mitigation application complete." 12 C.F.R. § 1024.41(b)(2)(i)(b).

76. A servicer must also exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application. 12 C.F.R. § 1024.41(b)(1).

77. Whenever a loss mitigation application becomes complete, the servicer must provide a notice to the borrower(s) within five business days stating, inter alia, that the loss mitigation application is complete and that the servicer expects to complete its evaluation within 30 days of the date it received the complete application. 12 C.F.R. § 1024.41(c)(3)(i).

78. Within 30 days of receiving a complete loss mitigation application, a servicer must evaluate a borrower for all loss mitigation options available to the borrower and provide the borrower with a notice in writing stating its determination of which loss mitigation options, if any, it will offer the borrower and, if applicable, information regarding the borrower's right to appeal. 12 C.F.R. § 1024.41(c)(1)(i)-(ii).

79. In this case, Plaintiffs submitted a loss mitigation application to Carrington on August 29, 2023, which was received by Carrington on September 5, 2023.

80. Carrington never provided notice in writing to either Plaintiff acknowledging receipt of the application or that it determined that that the application was either complete or incomplete. By failing to provide such notice, Carrington violated 12 C.F.R. § 1024.41(b)(2)(i)(b).

81. Upon information and belief, Plaintiffs' loss mitigation application was complete because it provided all the information that Carrington's website and application materials indicated Carrington required in evaluating loss mitigation options.

82. Had Carrington requested additional information from Plaintiffs in response to the loss mitigation application, Plaintiffs would have promptly provided that information.

83. Carrington never provided notice to Plaintiffs setting forth that it expected to complete its evaluation within 30 days of the date it received the complete application or any of

the other information specified in 12 C.F.R. § 1024.41(c)(3)(i), thereby violating 12 C.F.R. § 1024.41(c)(3)(i).

84. Carrington never provided Plaintiffs with a notice in writing stating its determination of which loss mitigation options, if any, it would offer Plaintiffs or, if applicable, information regarding their right to appeal the denial of any loan modification option. This violated 12 C.F.R. § 1024.41(c)(1)(ii).

85. Upon information and belief, Carrington did not evaluate Plaintiffs for loss mitigation options available to them, in violation of 12 C.F.R. § 1024.41(c)(1)(i).

86. Upon information and belief, had Carrington evaluated Plaintiffs for loss mitigation, they would have been eligible for an affordable loan modification.

87. At all relevant times, Janae DeRoche has maintained employment as a direct care worker. At all relevant times, Jasmine Reavis-Bey has maintained employment as a performer. Jasmine Reavis-Bey has also supplemented her income through gig work.

88. Upon information and belief, Plaintiffs met BNY's criteria for a loan modification.

89. Had Plaintiffs been offered an affordable loan modification by Carrington, they would have accepted it.

90. Had Plaintiffs and Carrington entered into a loan modification agreement, the Foreclosure Action would have been discontinued by stipulation of the parties.

91. Plaintiffs have suffered damages as a direct result of Carrington's RESPA violations, including:

a. In furtherance of efforts to get Carrington to acknowledge and evaluate their loss mitigation application, Plaintiffs incurred facsimile expenses and

transportation costs when exchanging documents with and visiting their attorneys;

b. Because the Mortgage has not been modified, Carrington has charged additional interest and late fees to the Mortgage account;

c. Carrington has charged attorney's fees for services that would not have been necessary had the Mortgage been modified and the parties been able to resolve the Foreclosure Action; and

d. As a result of Carrington's failure to acknowledge and evaluate their loss mitigation application, and the inability to resolve the Foreclosure Action, Plaintiffs have experienced feelings of uncertainty, anxiety, stress, embarrassment, and hopelessness.

92. Based on the foregoing, Plaintiffs are further entitled to recover reasonable costs, including attorney's fees, incurred as a result of this action. 12 U.S.C. § 2605(f)(3).

**SECOND CAUSE OF ACTION**
**Violation of New York General Business Law Section 349**

93. Plaintiffs restate, reallege, and incorporate by reference all foregoing paragraphs.

94. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."

95. Any person "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

96. Carrington refused to acknowledge or evaluate Plaintiffs' loss mitigation application, which it received on September 5, 2023, based on the pretense that Plaintiffs are not confirmed successors in interest to Jamilla Reavis-Bey.

97. However, no later than October 26, 2022, Carrington had already identified Plaintiffs as the intestate heirs of Jamilla Reavis-Bey and obtained a court order in the Foreclosure Action reflecting as much.

98. By refusing to acknowledge or evaluate Plaintiffs' Loss Mitigation Application under the false pretense that Carrington had not confirmed Plaintiffs' identities and their ownership interests in the Home, Carrington has engaged in deceptive acts or practices in violation of GBL § 349.

99. Carrington has also repeatedly, falsely denied that it has confirmed Plaintiffs' identities and ownership interests in the Home, or otherwise made misrepresentations to Plaintiffs as they sought to get Carrington to acknowledge their status as successors-in-interest to Jamilla Reavis-Bey, including:

a. In response to Janae DeRoche's November 2, 2022, request for information, falsely claiming that Ms. DeRoche was an unauthorized third-party and requiring her to provide a third-party authorization from her deceased mother to obtain information about the Mortgage;

b. In response to Plaintiffs' August 24, 2023, request for information, stating that Carrington had only recognized Ms. DeRoche as "a *potential* successor in interest" to Jamilla Reavis-Bey and that she was required to provide additional documentation in order to be confirmed as successor in interest;

c. In Carrington's October 11, 2023, letter to Ms. DeRoche, stating that Carrington was unable to confirm Ms. DeRoche as a successor-in-interest to Jamilla Reavis-Bey because it had not received sufficient information to do so;

d. In Carrington's October 30, 2023, letter to Jasmine Reavis-Bey, stating that Carrington had only recognized Jasmine Reavis-Bey as "a *potential* successor in interest" to Jamilla Reavis-Bey and that she was required to provide additional documentation in order to be confirmed as successor in interest; and

e. In Carrington's November 22, 2023, letter to Jasmine Reavis-Bey, stating that Carrington was unable to confirm Jasmine Reavis-Bey as a successor-in-interest to Jamilla Reavis-Bey because it had not received sufficient information to do so.

100. Because of Carrington's deceptive acts, Plaintiffs have suffered damages:

a. In furtherance of efforts to get Carrington to acknowledge and evaluate their loss mitigation application, Plaintiffs incurred facsimile expenses and transportation costs when exchanging documents with and visiting their attorneys;

b. Because the Mortgage has not been modified, Carrington has charged additional interest and late fees to the Mortgage account;

c. Carrington has charged attorney's fees for services that would not have been necessary had the Mortgage been modified and had the parties been able to resolve the Foreclosure Action; and

d. As a result of Carrington's failure to acknowledge and evaluate their loss mitigation application, and the inability to resolve the Foreclosure Action, Plaintiffs have experienced feelings of uncertainty, anxiety, stress, embarrassment, and hopelessness.

101. Upon information and belief, Carrington regularly avoids acknowledging successors in interest by imposing arbitrary procedures on potential successors in interest, failing to timely evaluate submitted documents, requesting documents and information it already

possesses, requesting the same documents and information repeatedly, requesting documents it knows do not exist or which are not reasonably necessary to confirm successors in interest, and/or otherwise treating confirmed successors as though they have not been confirmed.

102. Through these deceptive acts and practices, Carrington prevents and impedes successors in interest from obtaining account information, being evaluated for loss mitigation, assuming mortgages, and/or making payments on mortgages.

103. Complaints to the Consumer Financial Protection Bureau (CFPB)[2] demonstrate the impact of these acts and practices on consumers at large.

104. For example, in CFPB complaint #7817606, a consumer describes how they have been trying for three years to obtain a modification of their mortgage loan serviced by Carrington, including with the assistance of a housing counseling agency approved by the U.S. Department of Housing and Urban Development. After the consumer established that they were the successor in interest to their ex-husband, and notwithstanding that the Homeowner Assistance Fund[3] agreed to pay $60,000 towards the loan on the consumer's behalf to facilitate a loan modification, Carrington allegedly continued to require the consumer to provide their ex-husband's financial information in order to evaluate them for a loan modification. According to the consumer, they "are getting the run around, and the payments are still wracking up which will eventually make it impossible for me to retain my home even with the grant."

105. In another example, CFPB complaint #4865502, a consumer states that, following their mother's death, they were confirmed as successor in interest by their mother's mortgage

---

[2] The CFPB publishes certain complaints that it receives to its Consumer Complaint Database. *See Consumer Complaint Database*, Consumer Financial Protection Bureau https://www.consumerfinance.gov/data-research/consumer-complaints/ (last visited Aug. 20, 2026).

[3] The Homeowner Assistance Fund provided support to homeowners facing financial hardship associated with the COVID-19 pandemic. *See* American Rescue Plan Act, Pub. L. No. 117-2, § 3206, 135 Stat. 6 (2021).

servicer, and they then “started to work on assuming the loan and bring[ing] it current.” At this point, however, Carrington became the new servicer for the loan, and Carrington allegedly refused to acknowledge the consumer as the successor in interest, requesting documentation from the consumer to establish themselves as the successor in interest. According to the consumer, “[a]fter many calls to Carrington, they still won’t provide the opportunity to assume my mother’s loan or bring it current with a payment.”

106. In a further example, CFPB complaint #3059712, a consumer explains that after their father died, a beneficiary deed naming themself and their three brothers was recorded. Although the documentation was sent to Carrington four times over four months, the consumer states, Carrington “continue[s] to ignore our requests or make the process simple to finalize the Successor In Interest. . . . It’s almost as if they are trying to force us into foreclosure.”

107. In another example, CFPB complaint #11543687, a consumer states that they were confirmed as successor in interest by a prior servicer, but when Carrington took over servicing of the loan, it refused to acknowledge the consumer’s status as successor in interest. Although the prior servicer forwarded documents from the consumer sufficient to confirm the consumer as successor in interest to Carrington on multiple occasions, the consumer states, Carrington refused to acknowledge receipt of the documents and has been “stonewalling every attempt to resolve th[e] matter and failing to provide accurate or meaningful information.”

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray that this Court issue an order and judgment:

1. Declaring that Defendant violated Section 6 of RESPA;

2. Awarding Plaintiffs actual damages suffered as a result of Defendant’s RESPA violations;

3. Awarding Plaintiffs actual damages suffered as a result of Defendant's violations of section 349 of the New York General Business Law;

4. Declaring that Plaintiffs are successors-in-interest to the Mortgage;

5. Issuing an injunction requiring Defendant to evaluate Plaintiffs for loss mitigation;

6. Awarding Plaintiff costs and any attorney's fees; and

7. Granting such further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff requests a jury on all claims so triable.

Dated: August 28, 2026
New York, New York

Respectfully Submitted,

MOBILIZATION FOR JUSTICE, INC.

By: /s/ Randal K. Wilhite
Randal K. Wilhite
Carolyn E. Coffey
100 William Street, 6th Floor
New York, NY 10038
Tel: (929) 688-4029
Email: rwilhite@mfjlegal.org